IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ANTHONY REBICH and SHERRY REBICH, <br><br> Plaintiffs, <br><br> vs. <br><br> DEPARTMENT OF VETERANS AFFAIRS, UNITED STATES OF AMERICA, and DOES 1 through 5 inclusive, <br><br> Defendants. | CV 21-60-M-DLC-KLD <br><br> FINDINGS & RECOMMENDATION |

Plaintiffs Anthony Rebich ("Rebich") and Sherry Rebich bring this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2674, alleging that providers at the U.S. Department of Veterans Affairs Medical Center ("VAMC") at Fort Harrison and the Veterans Affairs Community Based Outpatient Clinic ("CBOC") in Kalispell provided Rebich inadequate medical care, resulting in a heart attack. The United States, on behalf of all defendants ("Defendants"), moves for summary judgment on all claims.

For the reasons set forth below, the Court recommends Defendants' motion for summary judgment be granted.

1

I. **Background**

On October 3, 2018, Rebich suffered a heart attack, requiring him to receive two stents to open the blockages in his heart. (Docs. 1, at 6; 24, at 5). On May 12, 2021, after exhausting their administrative remedies, Plaintiffs commenced this action for negligence, medical malpractice, and loss of consortium in connection with alleged untimely and inadequate cardiovascular care Rebich received during the months leading up to his heart attack. (Doc. 1, at 1–2). The Complaint alleges that providers at the VAMC and CBOC breached the appropriate standards of care when they failed to properly attend to and diagnose Rebich's ongoing complaints of shortness of breath and chest pain throughout the summer and fall of 2018, resulting in Rebich's severe heart attack in October. (Docs. 1, at 2, 6; 25, at 1).

The Court set a date of June 15, 2022, for the parties to simultaneously disclose liability experts and Plaintiffs to disclose damages experts. (Doc. 18, at 1–2). The government timely disclosed two medical liability expert witnesses: (1) Dr. Peter McGough, M.D., who provided an opinion regarding the general practice standard of care related to diagnosing and treating Rebich's cardiac condition; and (2) Dr. Stacy Stellflug, Ph.D., APRN, FNP-BC, who provided an opinion regarding the advanced-practice nursing standard of care. Both experts concluded that Rebich's providers had acted within the standard of care. (Doc. 21-6, at 8, 26).

Discovery closed on August 15, 2022. (Doc. 18, at 2). To date, Plaintiffs have not made any liability or damages expert witness disclosures or sought to extend discovery deadlines. On September 1, 2022, Defendants moved for summary judgment on all claims. (Doc. 19).

## II. Legal Standard

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).

Once the moving party has satisfied its initial burden with a properly supported motion, summary judgment is appropriate unless the non-moving party designates by affidavits, depositions, answers to interrogatories or admissions on file "specific facts showing that there is a genuine issue for trial." *Celotex*, 477

U.S. at 324. The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials" of the pleadings. *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 130, 150 (2000); *Anderson*, 477 U.S. at 249–50. The Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020–21 (9th Cir. 2007).

**III. Discussion**

The FTCA generally provides that the United States can be held liable for injury caused by the negligence of its employees in the same manner as a private person. 28 U.S.C. §§ 1346(b), 2674. The law of the jurisdiction where the alleged act or omission occurred governs the rights and liabilities of the parties. *Beech Aircraft Corp. v. United States*, 51 F.3d 834, 838 (9th Cir. 1995). Since the alleged negligence in this case occurred in Montana, Montana state law applies.

A plaintiff in a medical malpractice action in Montana must establish the following elements: (1) the applicable standard of care; (2) the defendant departed from that standard of care; and (3) the departure caused plaintiff's injury. *Labair v. Carey*, 291 P.3d 1160, 1167 (Mont. 2012). "Without expert testimony to establish

these elements, no genuine issue of material fact exists and the defendant is entitled to judgment as a matter of law." *Labair*, 291 P.3d at 1167.

The United States argues Plaintiffs have failed to disclose expert testimony to establish the elements of a medical malpractice claim under Montana law. (Doc. 20, at 5). As an initial matter, Plaintiffs contend expert testimony is not required in this case because their claims are "grounded in negligence and medical negligence . . . not a case against a medical professional in the common understanding" or "malpractice in the common sense." (Doc. 26, at 3).

Plaintiffs' assertion that their claims are not subject to Montana's expert testimony requirement for medical malpractice actions is unavailing. Recognizing that "litigants can frequently employ tort terminology to improperly re-characterize" the heart of their complaint, the Montana Supreme Court "has consistently looked to the nature of the acts alleged by the plaintiff, as opposed to the manner in which the complaint is framed, to determine the 'gravamen' of the complaint." *Saucier v. McDonald's Rests. of Mont., Inc.*, 179 P.3d 481, 493 (Mont. 2008); *see also Selensky-Foust v. Mercer*, 510 P.3d 78, 82 (Mont. 2022) (holding the 'gravamen' of the claim (medical malpractice), not the label attached (general negligence), controlled the statute of limitations period for the claim).

Montana's medical malpractice statute of limitations defines "an action for medical malpractice" as, in part, an action in tort for injury or death against

a physician, advanced practice registered nurse, or licensed hospital based upon alleged professional negligence. Mont. Code Ann. § 27-2-205(1). It is undisputed that the United States owns, operates, and controls VAMC and CBOB, which are licensed health care facilities in Montana. (Doc. 25, at 1). Plaintiffs state their claims are "premised on [Defendants'] failure to treat, the failure to diagnose, and the failure to provide Mr. Rebich with adequate medical care." (Doc. 26, at 4). The gravamen of Plaintiffs' claim is medical in nature, premised upon the care Rebich's health care providers at VAMC and CBOB provided or failed to provide; therefore, Plaintiffs' claim is a medical malpractice action subject to the expert testimony requirement under Montana law.

Montana has long required expert testimony to establish the standard of care in a medical negligence case. *Horn v. St. Peter's Hosp.*, 406 P.3d 932, 936–37 (Mont. 2017) (holding a manufacturer's recommendation or package insert can be relevant evidence to be considered by the jury, but it is not a substitute for the required expert evidence that describes the standard of care). Expert testimony is required to establish the elements of a medical malpractice claim "when they are beyond the common experience of the [factfinder] and the testimony will assist the [factfinder] in understanding the facts." *Horn*, 406 P.3d at 935. Failure to present evidence on the medical standard of care by expert medical testimony is fatal to a plaintiff's claim, "unless the conduct complained of is readily ascertainable by a

layman." *Griffin v. Moseley*, 234 P.3d 869, 875 (Mont. 2010) (quoting *Mont. Deaconess Hosp. v. Gratton*, 545 P.2d 670, 672 (Mont. 1976)). The Montana Supreme Court has stated that "on questions of whether 'reasonable care' was exercised in undertaking 'work calling for a special skill[,]' there can be 'no finding of negligence in the absence of expert testimony to support it.'" *Brookins v. Mote*, 292 P.3d 347, 362 (Mont. 2012) (citing *Carlson v. Morton*, 745 P.2d 1133, 1137 (1987)); *see also Dubiel v. Mont. DOT*, 272 P.3d 66, 70 (Mont. 2012) (holding expert testimony was required to adequately inform a jury of the standard of care in a negligence case when "numerous interrelated factors" had to be considered).

Defendants ask the Court to rule as a matter of law that Plaintiffs' claims fail because they neglected to provide expert testimony to establish: (1) the standard of care applicable to practitioners in the relevant field, (2) breach of that standard, and (3) proximate cause. (Doc. 20, at 5). Plaintiffs counter that expert testimony is not required when, as is the case here, "the conduct complained of is readily ascertainable by a layman," and the facts established by Rebich's affidavit and the Veterans Health Administration's ("VHA") own policies and procedures are sufficient to establish negligence. (Doc. 26, at 2–3). The Court disagrees.

Without more, the VHA policies themselves do not form a comprehensive "description of a standard of care" that would help the factfinder assess whether

7

providers breached the applicable standard of care in Rebich's unique medical situation. *See Horn*, 406 P.3d at 936. Rebich's affidavit asserts "the failure of the CBOC to adhere to its own scheduling policies and medical procedures left me without appropriate medical care for too long." (Doc. 24, at 7). But a plaintiff's own perceptions and opinions regarding the treatment he received or failed to receive, while relevant, are not sufficient to establish a breach of the standard of medical care in Montana.[1]

Rebich's medical history is complicated. As a 100 percent disabled veteran with documented exposure to Agent Orange in Vietnam, Rebich takes numerous medications and has "experienced a series of medical infirmities" since his return from service in Southeast Asia, including bladder cancer and blood clots, which were the subject of Plaintiffs' prior medical malpractice claims against the VA. (Docs. 24, at 1, 6; 21-4, at 3). The Court finds Plaintiffs' argument that a layman could fully comprehend the extent of Rebich's particular health risks, and whether providers met the standard of care in assessing those risks, unpersuasive. Expert

---

[1] The United States correctly points out that "[t]o the extent Plaintiffs contend the government's negligence stems from improper appointment scheduling, that theory is foreclosed, as recognized by Judge Molloy in his order granting summary judgment in Plaintiffs' previous case." *See Rebich v. Dept. of Veterans Affairs*, CV 19-26-M-DWM, 2020 WL 264324, at **1–2 (D. Mont. Jan. 17, 2020) (citing 38 U.S.C. § 511; *Tunac v. United States*, 897 F.3d 1197, 1200–06 (9th Cir. 2018) (holding that, while claims VA medical professionals breached their duty of care are actionable under the FTCA, claims for "administrative negligence in scheduling appointments" are barred by the Veterans Judicial Review Act, § 511).

testimony is required here because the special skills and "numerous interrelated factors that must be considered" when prescribing medical care are well-beyond the common experience of the factfinder; further, expert testimony would undoubtedly assist the factfinder in understanding the issues. *Brookins*, 292 P.3d 362; *Dubiel*, 272 P.3d at 70; *Horn*, 406 P.3d at 935.

The undisputed facts show that over the summer and fall of 2018, Rebich repeatedly sought care through Defendant medical providers regarding continued complaints of shortness of breath and chest pain. (Docs. 1, at 2, 6; 24, at 13–44). It is undisputed that after receiving some care from providers at the VAMC and CBOC, Rebich suffered a serious heart attack requiring two stents in his heart. (Doc. 24, at 5). The record reflects that Plaintiffs have failed to disclose any expert medical testimony.

Because Plaintiffs have proffered no expert testimony to either establish a prima facie case of medical malpractice or effectively rebut Defendants' expert witnesses as to either the applicable standard of care or providers' alleged breach of that standard of care, Plaintiffs have failed to demonstrate a genuine dispute as to any material fact and the United States is entitled to summary judgment.

//

//

//

**IV.** **Conclusion**

For the reasons discussed above,

IT IS RECOMMENDED that Defendants' Motion for Summary Judgment (Doc. 19) be GRANTED.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 23rd day of November, 2022.

_____
Kathleen L. DeSoto
United States Magistrate Judge